[No. H013884. Sixth Dist. Oct. 30, 1995.]

WILLIAM PYBURN, Plaintiff and Respondent, v.
FRANK ZOLIN, as Director, etc., Defendant and Appellant.

**COUNSEL**

Daniel E. Lungren, Attorney General, Robert R. Buell and Heidi T. Salerno, Deputy Attorneys General, for Defendant and Appellant.

Frank W. Dice for Plaintiff and Respondent.

## OPINION

**COTTLE, P. J.**—The Department of Motor Vehicles (DMV) appeals from a judgment granting William Pyburn's petition for a writ of mandate and ordering DMV to reinstate Pyburn's driving privilege. For reasons we shall explain, we reverse the judgment.

### FACTS

On October 11, 1991, Pyburn was involved in an accident that caused bodily injury. A peace officer investigating the accident believed Pyburn was driving under the influence of alcohol and asked him to submit to a chemical test. Pyburn refused. As a consequence, DMV suspended his license pursuant to the state's "implied consent" law,[1] from December 9, 1991, through December 8, 1992. Pyburn timely requested an administrative hearing "to show that the suspension is not justified." However, following the hearing, DMV determined that the suspension was "proper and required."

Four months after the accident, Pyburn pleaded no contest in the Monterey County Municipal Court to driving under the influence of alcohol causing bodily injury (§ 23153). He was sentenced in February 1992 to 20 days in jail, and was placed on probation. Among the conditions of probation was that he attend a first-time offender program. That condition was removed by the court, however, in May 1992.

In early 1993, Pyburn submitted proof of insurance to DMV, paid a $100 reissue fee, and had his license reinstated.

Over a year and a half later, on September 22, 1994, the Monterey County Municipal Court notified DMV for the first time of Pyburn's conviction for driving under the influence of alcohol causing bodily injury. DMV immediately sent Pyburn an order of suspension stating that his license would not be reinstated "until you provide this department with proof of financial responsibility [] and proof of completion of a drinking driver program which is licensed by the Department of Drug and Alcohol Programs, State of California." The authority cited by DMV was section 13352, subdivision (a)(2),

---

[1]Unless otherwise indicated, all statutory references are to the Vehicle Code. Section 13353, subdivision (a)(1), states: "If any person refuses the officer's request to submit to, or fails to complete, a chemical test or tests pursuant to Section 23157, upon receipt of the officer's sworn statement that the officer had reasonable cause to believe the person had been driving a motor vehicle in violation of Section 23140, 23152, or 23153, and that the person had refused to submit to, or did not complete, the test or tests after being requested by the officer, the department shall do one of the following: [¶] (1) Suspend the person's privilege to operate a motor vehicle for a period of one year. . . ."

which currently reads: "The department shall immediately suspend or revoke, or record the court-administered suspension or revocation of, the privilege of any person to operate a motor vehicle upon receipt of a duly certified abstract of the record of any court showing that the person has been convicted of a violation of Section 23152 or 23153 or subdivision (a) of Section 23109, or upon receipt of a report of a judge of the juvenile court, a juvenile traffic hearing officer, or a referee of a juvenile court showing that the person has been found to have committed a violation of Section 23152 or 23153 or subdivision (a) of Section 23109. If any offense in this section occurs in a vehicle defined in Section 15210, the suspension or revocation specified below shall apply to the noncommercial driving privilege. The commercial driving privilege shall be disqualified as specified in Section 15300. For purposes of this section, suspension or revocation shall be as follows: . . . [¶] (2) Upon a conviction or finding of a violation of Section 23153 punishable under Section 23180, the privilege shall be suspended for a period of one year. The privilege shall not be reinstated until the person gives proof of ability to respond in damages and gives proof satisfactory to the department of successful completion of a program described in Section 23161."

On December 16, 1994, Pyburn filed a petition for writ of mandate, seeking an order compelling DMV "to rescind the order of suspension and return, or reissue a new license to Petitioner." In his memorandum in support of the writ petition, Pyburn pointed out that "[i]n 1992 Vehicle Code section 13352(a)(2) did not require completion of a first offender program. The statute read as follows: 'Upon a conviction of a violation of Section 23153 punishable under Section 23180, the privilege shall be suspended for a period of one year. The privilege shall not be reinstated until the person gives proof of ability to respond in damages as defined in Section 16430.' [] [¶] In 1993 the statute was amended to its current form which requires a first offender program."

At the hearing, DMV pointed out that "[t]here was a section in the Vehicle Code that did exist [in 1992] concerning the alcohol rehabilitation program after conviction mandated by the DMV. And that was not in 13352, but it appeared in 13353.4(c). And it states that the privilege to operate a motor vehicle shall not be restored after a suspension or revocation pursuant to section 13352 until the person gives proof of completion of the program approved by the Department of Motor Vehicles. [¶] Now his license was suspended after the conviction pursuant to section 13352; therefore it [i.e., § 13353.4, subd. (c)] was the appropriate section back in [1992] when he was convicted. And the DMV merely referred to the newly existing section [i.e., 13352] when it sent out the letter, because that is the one they were doing it under in 1994 when they finally got the abstract."

The court announced that it would allow Pyburn to submit additional papers and would take the matter under submission. After Pyburn filed his memorandum, the court granted Pyburn's petition and issued the writ.

DMV timely appealed.

## DISCUSSION

■ DMV argues the trial court erred in granting Pyburn's writ petition, as DMV was under a *mandatory* duty to require Pyburn to present proof that he completed a drinking driver program before it could reinstate his license. We agree.

In 1992, when Pyburn was convicted, section 13352, subdivision (a) read in pertinent part: "The department shall immediately suspend or revoke, or record the court-administered suspension or revocation of, the privilege of any person to operate a motor vehicle upon receipt of a duly certified abstract of the record of any court showing that the person has been convicted of a violation of Section 23152 or 23153 . . . ." Pyburn was convicted in 1992 of a violation of section 23153, and upon receipt in 1994 of the abstract of judgment, DMV immediately suspended his driving privilege.

Section 13353.4 then explained that the "privilege to operate a motor vehicle shall not be restored after a suspension or revocation pursuant to Section 13352 until the person gives proof satisfactory to the department of completion of a [drinking driver program] for any other person whose driving privilege is suspended or revoked pursuant to section 13352." Thus, DMV could not restore Pyburn's license until it received proof he had attended a drinking driver program.

Pyburn argues here, as he did successfully in the trial court, that section 13353.4 "cannot be used as a reason for revocation or suspension of respondent's privilege. This section provides for the *restoration* of driving privileges. Respondent's driving privilege had been restored in 1993." Pyburn misconstrues DMV's arguments.

Pyburn's driving privilege was suspended in 1991 for his failure to submit to a chemical test. (See § 13353, subd. (a)(1), quoted in fn. 1, *ante*.) It was restored in early 1993, when he showed proof of insurance and paid a reinstatement fee. However, in 1994, Pyburn's driving privilege was suspended for a different reason—because DMV received an abstract of judgment showing that Pyburn had been convicted of a violation of section

23153. (See § 13352.) His license had not been restored under this latter statute. Hence, there is no merit in Pyburn's argument that section 13353.4, subdivision (c) is inapplicable because his license has already been restored.

Pyburn also contends that the court could properly set aside his license suspension because of the "unreasonable delay" between his conviction and DMV's action. He cites *Gates* v. *Department of Motor Vehicles* (1979) 94 Cal.App.3d 921, 925 [156 Cal.Rptr. 791], for the proposition that a trial court "has the inherent power to dismiss administrative proceedings brought to revoke a state-issued license where there has been an unreasonable delay between the discovery of facts constituting the reason for the revocation and the commencement of revocation proceedings, and where the licensee has been prejudiced by the delay." *Gates*, however, is clearly distinguishable. There DMV revoked respondent Gates's dismantler's license several years after it investigated him for various Vehicle Code violations. The court found that DMV's dilatory conduct prejudiced Gates because the witnesses no longer had any recollection of the events and thus Gates would be unable to get a fair hearing. Here, in contrast, DMV did not delay at all: within two weeks of receiving the abstract of judgment, DMV issued its order of revocation. Furthermore, Pyburn was not prejudiced. Suspension hearings are not held in mandatory suspension situations where the suspension occurs upon receipt of the abstract of judgment.

Because DMV's actions were mandated by statute, the court erred in granting Pyburn's writ petition and ordering DMV to reinstate his driving privileges. (Cf. *McDaniel* v. *Department of Motor Vehicles* (1994) 22 Cal.App.4th 76 [27 Cal.Rptr.2d 149] [section 13352 imposes a mandatory duty on DMV to suspend the license and not to reinstate it until the driver completes all the requirements listed in section 13352, including the drinking driver program].)

DISPOSITION

The judgment is reversed. Costs on appeal to appellant.

Bamattre-Manoukian, J., and Wunderlich, J., concurred.